IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENYATA ROSS,<br>　　　Plaintiff, | §<br>§<br>§ | |
| v. | § | No. 3:24-CV-905-E-BW |
| | § | |
| TEXAS INSTRUMENTS,<br>　　　Defendant. | §<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On July 17, 2024, Defendant Texas Instruments Incorporated ("TI") filed a Motion for Summary Judgment seeking dismissal of claims brought by Plaintiff Kenyata Ross. (Dkt. No. 12 ("Mot.").)[1] Ross did not file a response. *See* N.D. Tex. L.R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."). This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and Northern District of Texas Special Order No. 2-354. (*See* Dkt. Nos. 3, 16.)

For the reasons stated below, the undersigned magistrate judge recommends that the Court **GRANT** TI's Motion for Summary Judgment. (Dkt. No. 12.)

---

[1] TI contemporaneously filed its brief in support of the Motion, (Dkt. No. 13 ("Br.")), and appendix, (Dkt. No. 14 ("App.")).

## I. BACKGROUND[2]

TI employed Ross from May 2022 until April 10, 2023. (App. 3-4.) On February 2, 2023, TI emailed Ross a Separation and General Release Agreement ("Agreement") offering a separation package that, if accepted, would entitle Ross to monetary compensation equal to a certain number of weeks at her salary, job-search assistance, educational assistance, and other benefits. (App. 3, 14-20.) The proposed Agreement's "Waiver and Release of Claims" in § 11 of the proposed agreement provided that, by signing the Agreement, Ross would receive these benefits in exchange for voluntarily and knowingly releasing TI—including all affiliates and subsidiaries—"from any claims of any nature," including claims for a violation of state or federal law and any claims related to her employment or termination and including "claims of discrimination on the basis of any protected class or retaliation." (App. 17 ¶ 11.)[3] Additionally, the proposed Agreement advised Ross that she may consult legal counsel in private concerning the Agreement's effect before signing it. (App. 19 ¶ 23.)

TI advised Ross that she could accept the Agreement by signing it and returning a scanned or photographed copy of the signature page by February 9, 2023.

---

[2] The facts recounted are based on declarations and other evidence adduced by TI. Having not responded to the motion for summary judgment, Ross has not disputed any of the facts adduced by TI.

[3] The terms of the Agreement provided that Ross did not waive or release rights pertaining to TI's benefits or welfare plans, worker's compensation or unemployment benefits, rights under COBRA, and rights that cannot be released by law. (App. 17 ¶ 12.) Those reservations do not appear to be relevant to the claims at issue in the motion.

(App. 14.) Ross signed the Agreement on February 9, 2023, and she transmitted a copy of the signature page to TI. (App. 3, 12, 34-40.) As a result, TI paid Ross an amount equal to 16 weeks of pay pursuant to the Agreement. (App. 4 ¶ 9.)

On August 1, 2023, Ross filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she was sexually harassed by coworkers and that she complained to no avail to both her supervisor and the human resources department of TI. (App. 69.) She further alleged that nothing was done as a result of her complaints and that the working conditions became hostile, resulting in verbal and physical altercations, "both at work and outside of work." (App. 69.) She asserted in her EEOC complaint that she was suspended from employment on January 28, 2023, and terminated on or about February 7, 2023. (App. 69.) She stated that she "fe[lt] that the reason [she] was terminated was in retaliation for complaining about discrimination and a hostile working environment." (App. 69.) She further stated that she believed she had been discriminated and retaliated against based on her race and sex and for complaining of discrimination, all in violation of Title VII and Section 704a of the Civil Rights Act of 1964. (App. 70.)

Proceeding pro se, Ross filed suit against TI in the 298th District Court of Dallas County, Texas. (Dkt. No. 1-1 Exh. 2 ("Compl.").) Ross alleged that TI violated her rights by failing to "properly respond to [Ross's] complaints of harassment" by coworkers and by "wrongfully terminating" her based on "false accusations" by another person. (Compl. ¶¶ 4-5.) TI answered and removed the

action to this Court. (Dkt. No. 1; Dkt. No. 1-1 at Exh. 4 ("Answ.").) The Court's Scheduling Order provided for the completion of discovery by May 7, 2025. (Dkt. No. 8 at 7.)

TI filed its motion for summary judgment with a supporting brief and appendix on July 17, 2024. (*See* Mot.) Magistrate Judge Horan ordered Ross to file a response to the motion no later than August 23, 2024, but she did not file a response. (Dkt. No. 15.) The undersigned allowed Ross another opportunity to file a response complying with Judge Horan's order. (*See* Dkt. No. 18.) The undersigned instructed Ross to respond no later than October 9, 2024, and warned her that failure to do so would result in the Court adjudicating the motion for summary judgment without her participation. (*Id.*) Ross has not submitted a response to TI's summary judgment motion.

## II.  LEGAL STANDARDS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). If a reasonable jury could return a verdict for the non-moving party, then there is a genuine issue of material fact. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250; *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *Lynch Props.*, 140 F.3d at 625 (citation omitted).

### III.  ANALYSIS

A.   **The effect of Failing to File a Response to a Motion for Summary Judgment.**

As an initial matter, the undersigned must address the effect of Ross's failure to respond to the motion.  When a nonmoving party does not file any response to a motion for summary judgment, the "failure to respond does not permit the court to enter a 'default' summary judgment[.]"  *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-CV-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023).

As the United States Court of Appeals for the Fifth Circuit has explained,

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule.  *John v. La. (Bd. of Trustees) for State Colleges & Universities*, 757 F.2d 698, 709 (5th Cir.1985).  The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.  *Id.* at 708.

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

But, when a summary judgment nonmovant fails to respond to the motion the nonmovant is "relegated to her unsworn pleadings, which do not constitute summary judgment evidence" under Rule 56. *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Furthermore, whenever a party fails to "properly address another party's assertion of fact as required by Rule 56(c)," Rule 56(e) provides the court with different alternatives. *See* Fed. R. Civ. P. 56(e)(1)-(4). The court may give the party "an opportunity to properly support or address the fact," *id.*, as this Court has done on two occasions to no avail. Rule 56(e) also allows the court to "consider the fact undisputed for purposes of the motion[,]" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" *Id.*; *see also Boyd*, 2023 WL 4141052, at *1.

Here, the pleadings are not verified, and Ross has presented no summary judgment evidence disputing TI's facts. "[A] court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Bryan v. Cano*, No. 22-50035, 2022 WL 16756388, at *4 (5th Cir. Nov. 8, 2022) (unpublished); *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-517-D, 2020 WL 3317096, at *6 (N.D. Tex. June 18, 2020) ("[A]lthough the court is not permitted to enter a 'default' summary judgment, the court is allowed to accept the evidence adduced by plaintiffs as undisputed and may

grant summary judgment if the motion and supporting materials show plaintiffs are entitled to it.").

**B.     TI is entitled to summary judgment on the wrongful termination claim based on its affirmative defense of release.**

TI asserts the affirmative defense of waiver and release against Ross's claims. (Answ. ¶ 2.) As the summary judgment movant on an affirmative defense, TI "bears the burden of proof . . . [and] must establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The Fifth Circuit has held that "[t]he interpretation and validity of a release of claims under Title VII is governed by federal law." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002). For waiver and release, [TI] must prove that Ross's waiver was a "knowing and voluntary" act, as determined by a "totality of the circumstances." *See id.* Then the burden shifts to Ross—the former employee—to "demonstrat[e] that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id.* at 441 (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)).

**1.     TI has met the required elements of a valid release that was knowing and voluntary.**

"In determining whether a release was knowingly and voluntarily executed, federal law requires that a valid waiver is not to be 'lightly inferred.'" *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 455 (5th Cir. 1986) (citing *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir. 1976)). First, "[t]he employer bears the burden of

establishing that its former employee 'signed a release that addresses the claims at issue, received adequate consideration, and breached the release.'" *Smith*, 298 F.3d at 441 (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)).

For a release to be valid, it must address the claims at issue. *See id.* Here, the Agreement expressly states that by signing it, Ross agrees to release TI, along with any affiliates and subsidiaries, from "any claims of any nature . . . that are based on facts occurring at any time before or at the time [she] sign[s] this Agreement, including, without limitation: any claims for a violation of any federal, state, or local law, . . . any claims related to [her] employment or termination from employment with TI, including, without limitation, claims of discrimination on the basis of any protected class or retaliation." (App. 17 ¶ 11.) The release clearly encompasses Ross's claims for discrimination, harassment, and retaliation. *See Smith*, 298 F.3d at 441-42 (holding that release agreement language "any and all employment related claims" included Title VII claims even if not expressly stated).

Second, Ross signed the release on February 9, 2023. (App. 12.) TI's HR representative emailed Ross the release on February 2, 2023, to provide an opportunity to review the Agreement and seek legal advice. (App. 3,14.) The Agreement's terms allowed Ross seven days to consider the terms, allowed her to consider it in private, and advised her to consult with a lawyer before signing. (Release Agreement, App. 15 ¶1, 19 ¶23.) Ross timely emailed back a signed copy of the Agreement. (App. 34-40.)

Third, Ross received $11,001.60—equal to 16 weeks of pay—in exchange for signing the Agreement. (App. 4 ¶ 9, 11.) In addition to monetary compensation, TI's Agreement offered additional benefits such as educational assistance and job-finding services. (App. 16.) Courts in this Circuit have accepted enhanced layoff plans and monetary compensation as adequate compensation in exchange for a release agreement. *See, e.g.*, *Smith*, 298 F.3d at 442-43 (finding that two months of salary and agreeing to provide favorable work-related references constituted adequate consideration in exchange for a release); *Williams* 23 F.3d at 935-36 (finding that a release offering an enhanced supplemental layoff plan was valid consideration); *see also Pride v. O'Rourke*, No. 2:19-CV-234-Z, 2021 WL 2689323, at *4 (N.D. Tex. June 30, 2021) (finding that $3,500 was sufficient consideration). Therefore, the benefits of the Agreement provided to Ross constitute adequate consideration in exchange for releasing TI of possible claims.

Finally, Ross breached the release agreement by filing the EEOC charge and subsequent lawsuit after signing a release agreement that addressed her claims. *See Smith*, 298 F.3d at 443 (finding that Smith breached a release agreement by filing a Title VII claim against her employer, which was a matter addressed in the release agreement).

### 2. Ross has failed to present any evidence of fraud, duress, material mistake or other grounds for invalidity of the release.

Once an employer demonstrates there was a valid release, the burden shifts to the employee to "demonstrat[e] that the release was invalid because of fraud, duress,

material mistake, or some other defense." *Williams*, 23 F.3d at 935. Courts make this determination by examining the totality of the circumstances. *Id.* "To determine whether the former employee has met the burden of establishing a defense to the validity of the release," courts consider:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Smith*, 298 F.3d at 441 (quoting *O'Hare v. Global Nat. Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)).

As noted above, Ross did not respond to TI's motion for judgment, and therefore, has not presented any admissible summary judgment evidence creating a material factual dispute with respect to duress, fraud, material mistake, or any similar defense to enforcement of her release. The only mention of duress is in the Joint Rule 26(f) Report. (Dkt. No. 7 at 1-2.) The undersigned notes that Ross states, in the Rule 26(f) Report, that she signed the Agreement under duress and was "under extreme mental and emotional stress" at that time. *Id.* However, as this undetailed statement is not in a verified pleading and is not competent summary judgment evidence.

## IV. RECOMMENDATION

TI has adduced undisputed facts establishing that Ross validly released her claims against TI in connection with a separation agreement between them, and it

has demonstrated beyond peradventure all elements of its affirmative defense for release and waiver. The Court therefore should **GRANT** TI's Motion for Summary Judgment. (Dkt. No. 12.)

**SO RECOMMENDED** on October 28, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).